UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DERRICK STAMPS                                                                    PLAINTIFF

V.                                               CIVIL ACTION NO. 3:25-CV-733-DPJ-ASH

CITY OF VICKSBURG, ET AL.                                               DEFENDANTS

ORDER

This employment dispute is before the Court on Defendants' motion to Dismiss [11] Plaintiff Derrick Stamps's claims of First Amendment retaliation, race discrimination, and age discrimination.  For the reasons stated below, the Court grants Defendants' motion because Stamps lacks standing, but he will be allowed to seek leave to amend.

I.        Facts and Procedural Background

Stamps began serving as the Fire Chief for Vicksburg, Mississippi, in June 2000.  Compl. [1] ¶ 9.  Twenty-five years later, in June 2025, Vicksburg held a mayoral election during which Defendant Willis Thompson ousted incumbent George Flaggs.  *Id.* ¶¶ 10–11.  Stamps was a "known supporter[] of Mr. Flaggs."  *Id.* ¶ 14.  After Thompson was sworn in, Stamps learned that the Mayor and Board of Aldermen passed a resolution appointing department heads across the city to interim positions.  *Id.* ¶¶ 13–14.  This resolution listed all current department heads except Stamps and the police chief (another Flaggs supporter).  *Id.* ¶ 14.

Mayor Thompson told Stamps about that decision in a text message, telling him that "the Board had decided to go in a different direction regarding Mr. Stamps' role as Fire Chief."  *Id.* ¶ 16.  Stamps wanted answers, so he attended the next Board of Aldermen meeting to ask about his termination.  *Id.* ¶ 18.  Only the Mayor spoke, claiming he and the Board had the discretion to

appoint whomever they wished because Mississippi was an at-will state.  *Id.* ¶ 19.  Stamps was 51 years old at the time.  *Id.* ¶ 8.

Stamps, who is Black, was eventually replaced with a substantially younger white male with less experience.  *Id.* ¶¶ 25–26.  So he filed with the Equal Employment Opportunity Commission (EEOC) a charge of race and age discrimination against the City of Vicksburg, which the EEOC chose not to investigate.  *Id.* ¶ 27; EEOC Determination [1-2] at 1.  He then sued the City of Vicksburg and Thompson for retaliation and discrimination.  Compl. [1] ¶¶ 28–45.

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserting that Stamps failed to state a claim.  Mot. [11].  But their motion also incorporated their memorandum, in which they said Stamps lacks Article III standing to pursue his claims.  *See, e.g.*, Defs.' Mem. [12] at 8 n.8.  Because Defendants addressed standing in their memorandum [12], Stamps had an opportunity to respond, though he didn't.  But even if Defendants hadn't mentioned it in their briefing, constitutional standing is jurisdictional and must be addressed sua sponte.  *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331–32 (5th Cir. 2002).  The Court must also consider that jurisdictional issue before addressing whether Stamps stated a claim.  *See United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021).

II.     Standard of Review

A motion to dismiss for lack of Article III standing falls under Federal Rule of Civil Procedure 12(b)(1), which permits dismissal for lack of subject-matter jurisdiction.  *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) (applying Rule 12(b)(1)).  "A district court may dismiss a case under Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

2

supplemented by undisputed facts plus the court's resolution of disputed facts.'" *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

III.    Analysis

Defendants attack standing in two ways.  First, they argue that Stamps lacks standing to sue Thompson individually.  *See* Defs.' Mem. [12] at 4.  Second, they say all claims fail because Stamps has not shown individual injury.  *See id.* at 8 n.8.  Because the second argument is correct, the analysis starts and stops there.

A.    Lack of Standing

"Article III of the United States Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Parr v. Cougle*, 127 F.4th 967, 972 (5th Cir. 2025) (quoting U.S. Const. art. III, § 2).  "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  When there are multiple defendants, a plaintiff "must demonstrate standing for each claim that [he] press[es] against each defendant." *Murthy v. Missouri*, 603 U.S. 43, 44 (2024) (quotation marks omitted) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).

To establish the injury-in-fact element, a plaintiff must show he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).  For an injury to be "concrete," it "must actually exist," be "de facto," and be

3

"real." *Id.* at 340 (emphasis omitted). And for an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Defendants' standing arguments flow from the way Stamps chose to plead his claims. According to Stamps, his claims all "arise from Plaintiff's abrupt *termination* as Fire Chief for the City of Vicksburg after more than two decades of service." Pl.'s Mem. [14] at 1 (emphasis added). That description in his memorandum is consistent with the way Stamps pleaded his claims in his Complaint, when he repeatedly alleged that Defendants "terminated" his employment after Thompson's election. *See* Compl. [1] ¶¶ 17–18, 21, 24, 29.

But that's not what happened. In Mississippi, mayors and boards of aldermen "have the power and authority to appoint . . . officers and employees as may be necessary . . . [who] shall hold office at the pleasure of the governing authorities and may be discharged by such governing authorities at any time, either with or without cause." Miss. Code Ann. § 21-3-5. Notably, "[t]he terms of office or employment of all officers and employees so appointed *shall expire* at the expiration of the term of office of the governing authorities making the appointment." *Id.* (emphasis added). So, Defendants did not terminate Stamps's tenure, his position ended by statute as did the positions of every other department head. *See* Compl. [1] ¶ 14. He simply was not reappointed.

While termination and failure to reappoint both factually mean Stamps lost his job, Stamps pleaded the former and not the latter. He then pressed that argument in his memorandum despite Defendants' standing arguments based on section 21-3-5. Indeed, Stamps ignored standing altogether. *See generally* Pl.'s Mem. [14].

So, to the extent that Stamps premises his claim on the termination of employment at the end of Mayor Flaggs's term, there was no concrete injury because there was no position from

4

which to be terminated.  *See* Miss. Code Ann. § 21-3-5.  Nor was the injury particularized.  The statute that ended his employment affected all appointed municipal "officers and employees" the same way.  *Id.*  Stamps has not, therefore, shown an injury that affected him in "a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1; *see also Parr*, 127 F.4th at 972.  Finally, he cannot show that any Defendant *legally* caused his termination under section 21-3-5.  For these reasons, Stamps has failed to meet his burden to show standing.  *See Spokeo*, 578 U.S. at 339.

> B.      Leave to Amend

Although Stamps lacks standing to pursue claims based on the termination of his employment under section 21-3-5, it is not apparent that he has pleaded his best case.  Under those circumstances, a plaintiff should be given an opportunity to seek leave to amend.  *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (noting under Rule 12(b)(6) that final dismissal should occur "without granting leave to amend, unless the defect is simply incurable"); *see also Watkins v. Lujan*, 922 F.2d 261, 264 (5th Cir. 1991) ("While a court must dismiss a case over which it has no jurisdiction whenever a fatal defect appears, leave to amend defective allegations of subject matter jurisdiction should be freely given.").

Finally, because Stamps has not yet established standing, the Court may not proceed with the Rule 12(b)(6) arguments.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Nor may it offer advisory opinions.  That said, Stamps would be wise to fully consider Defendants' arguments when drafting his proposed amended complaint.  There may be no further opportunities to amend.

## IV.    Conclusion

The Court has considered all arguments.  Any argument not specifically addressed would not affect the outcome.  For the reasons stated above, the Court grants Defendants' Motion to

Dismiss [11] for lack of standing but will allow Stamps an opportunity to seek leave to amend. If he chooses to do so, he must file a motion and attach a proposed amended complaint within 14 days of this Order.  Failure to seek leave to amend will result in a final order of dismissal with prejudice.

  **SO ORDERED AND ADJUDGED** this the 28th day of July, 2026.

      s/ *Daniel P. Jordan III*
      UNITED STATES DISTRICT JUDGE